# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TORREY VASHON BANKS,

    Defendant.

Case No. 5:18-CR-40060-HLT

## MEMORANDUM AND ORDER

Defendant Torrey Vashon Banks moves to suppress the evidence found in a vehicle he was driving. Doc. 23. The Court held an evidentiary hearing on January 11, 2019, and received evidence, including the testimony of the arresting officer and the video recording from the officer's dash camera. Because Mr. Banks fails to establish a Fourth Amendment violation, the Court denies his motion.

**I.  BACKGROUND**

On April 6, 2018, Mr. Banks was driving a gold Cadillac westbound on Interstate 70 through Wabaunsee County, Kansas. Kansas Highway Patrol Trooper Adam Simone, parked in the median, observed the Cadillac traveling in the left lane alongside a pickup truck towing a trailer in the right lane. Trooper Simone saw the Cadillac move into the right lane behind the truck. The trooper subsequently initiated a traffic stop on the Cadillac for following the truck too closely.

Mr. Banks was driving and Tyrone Sanders, the owner of the Cadillac, was in the passenger seat. Trooper Simone requested their driver's licenses, insurance, and registration. When he ran a warrants and criminal history check, he learned that the men had felony criminal histories ranging from homicide to burglary to drug charges. He also learned that Mr. Banks had a prior conviction

1

for felon in possession of a firearm. Trooper Simone issued a warning ticket for following too closely in violation of K.S.A. § 8-1532(a) and asked for consent to search the car. Mr. Banks refused the request. Trooper Simone then told them he was going to hold them for a canine unit to arrive. Just over one minute later, Kansas Highway Patrol Trooper Olson arrived with the drug-detection dog. The dog alerted. When the troopers searched the trunk, they found a black plastic trash bag containing a loaded semi-automatic handgun, clothing, and paystubs with Mr. Banks's name on them. Mr. Banks acknowledged the clothes were his but denied knowledge of the handgun. Mr. Banks is charged with being a felon in possession of a firearm. He moves to suppress the handgun, claiming it was obtained in violation of his Fourth Amendment rights.

## II. STANDARD

The Fourth Amendment protects people from unreasonable searches and seizures of their persons and their property. U.S. CONST. amend. IV. Evidence obtained in violation of these rights is subject to suppression under the exclusionary rule. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

## III. ANALYSIS

### A. Direct Challenge

Mr. Banks does not make a direct challenge to the search of Mr. Sanders's car and has not produced any evidence that he owns the car or has a property or possessory interest in it or in the firearm found in the trunk. *See Rakas v. Illinois*, 439 U.S. 128, 134, 149 (1978) (holding that a "passenger *qua* passenger" is not entitled to suppression of the evidence based on a claim that the search violated the owner's Fourth Amendment rights); *United States v. Jefferson*, 925 F.2d 1242, 1249 (10th Cir. 1991) (applying *Rakas* to both the passenger and the non-owner driver). Because Mr. Banks does not make this challenge and because there is no evidence that he had a possessory

or property interest in the area searched or an interest in the property seized, the Court finds that Mr. Banks lacks direct standing to challenge the vehicle search.

### B. Derivative Challenge

Although Mr. Banks is not directly challenging the vehicle search, he is asserting a Fourth Amendment challenge based on the seizure of his person. A passenger or non-owner driver of a car may bring a derivative challenge to "'the lawfulness of his own detention and seek to suppress the evidence found as the fruit of [his] illegal detention.'" *United States v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir. 2001) (quoting *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000)). To prevail on this "derivative evidence" theory, a defendant must show both (1) "that the detention did violate his Fourth Amendment rights," and (2) "a factual nexus between the illegality and the challenged evidence." *Nava-Ramirez*, 210 F.3d at 1131 (citations omitted); *DeLuca*, 269 F.3d at 1132.

Mr. Banks attempts to satisfy the *DeLuca/Nava-Ramirez* test by claiming that he was unlawfully seized during the traffic stop, both at its inception and after Trooper Simone returned his documents, and that a factual nexus exists between each illegal detention and the challenged evidence. The Court addresses each argument in turn.

#### 1. The Initial Stop

Mr. Banks initially argues that the traffic stop was not justified at its inception and that a factual nexus exists between this illegal detention and the discovery of the firearm. A traffic stop is valid at its inception when it "is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc). "The validity of a traffic stop under the Fourth Amendment turns on whether this particular officer had

reasonable suspicion that this particular motorist violated 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction." *Id.* (quoting *Delaware v. Prouse,* 440 U.S. 648, 661 (1979)).

At the hearing, Trooper Simone testified that he stopped Mr. Banks for following the truck too closely in contravention of K.S.A. § 8-1532(a). This statute states:

> The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

Trooper Simone testified that he observed Mr. Banks violate this statute. He stated that he clocked Mr. Banks's car driving about 75 miles per hour in the left lane while passing a pickup truck and that, after the vehicles passed his location, Mr. Banks "slowed down considerably [and] got in behind the pickup truck too closely." Trooper Simone stated that from his nine years' experience observing traffic, he could visually judge when a car is obviously too close behind another. When asked to explain "too close," Trooper Simone stated, "[t]he rule is two seconds," and described the rule as meaning "when the back of the front car passes over a line, count one Mississippi, two Mississippi," and if the second vehicle "crosses that line before you get to two seconds," it is too close.

Mr. Banks challenges Trooper Simone's testimony and argues that Trooper Simone could not have "credibly observed the traffic violation he described" from his position in the median of the highway or once he started following the vehicles. Mr. Banks contends Trooper Simone was too far back and directly behind the vehicles. He also argues the dash camera video does not show the alleged violation.

After reviewing the evidence, the Court finds that Trooper Simone observed the Cadillac follow too closely or, at a minimum, had a reasonable suspicion that Mr. Banks committed the

4

traffic violation of following the truck too closely. The Court observed Trooper Simone's testimony and finds him credible. His demeanor was calm and professional. He was attentive to the questioning and cross-examination and was forthcoming and forthright in his testimony, even when giving answers that were not advantageous to the government's case. His testimony was internally consistent, and he has steadfastly maintained the basis for the stop was following the truck too closely. *See, e.g.*, Gov. Ex. 2 Copy of Warning Ticket. The Court credits Trooper Simone's ability to determine when a vehicle is following another too closely based on his stated criteria and experience, which includes writing citations for this offense hundreds of times during his nine-year tenure with the Kansas Highway Patrol. Mr. Banks's cross-examination of Trooper Simone did not expose any inherent inconsistencies in his testimony or suggest any ulterior motive for making the traffic stop.

The Court carefully reviewed the dash camera footage and finds that it is unhelpful to the resolution of this issue. The video is grainy, blurry, and lacks contrast. Although it does not clearly show a violation, it also does not undermine Trooper Simone's testimony. It shows that the encounter occurred in the middle of the day and in fair weather and that no other vehicle or object obstructed Trooper Simone's view. The Court is also not persuaded by Mr. Banks's arguments regarding distance or angle and finds that these issues do not undermine Trooper Simone's credibility or stated observations.

Based on the above facts, the Court finds that the government has established that Trooper Simone observed the violation or, at a minimum, had reasonable suspicion to believe that Mr. Banks was following the truck too closely. *See United States v. Vercher*, 358 F.3d 1257, 1262 (10th Cir. 2004) (government not required to prove actual violation; an officer's "observations need only articulate a basis for a <u>suspicion</u> that a traffic violation might have been occurring").

5

Therefore, the stop was valid at its inception. Because Mr. Banks fails to satisfy the first prong of the *DeLuca/Nava-Ramirez* test, the Court need not reach the second prong of that test with regard to this argument.

## 2. The Continued Detention While Awaiting Canine Unit

Mr. Banks next argues that he was unlawfully seized after Trooper Simone returned his documents and that a factual nexus exists between this illegal detention and the discovery of the firearm. The primary mission of a traffic stop is "to address the traffic violation that warranted the stop." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (internal citations omitted). A lawful traffic stop may become unlawful it is continued after that mission is complete. *See United States v. Moore*, 795 F.3d 1224, 1229 (10th Cir. 2015). That mission is complete when the officer issues a ticket and returns the occupants' documents; after that, an officer must have consent or a reasonable suspicion of illegal activity to continue to detain the occupants. *Id.* Mr. Banks argues that he was unlawfully seized because Trooper Simone continued to detain him, without his consent and without reasonable suspicion, after completing the mission of the traffic stop and while awaiting the arrival of the drug-detection dog.

Reasonable suspicion to detain a person is evaluated by examining the totality of the circumstances known to the officer at the time, and the government bears the burden of proving the reasonableness of the officer's suspicion. *United States v. Kitchell,* 653 F.3d 1206, 1218 (10th Cir. 2011). Trooper Simone identified several factors that led him to believe that criminal activity could be afoot: the men's criminal histories involving drugs, guns, and violence; the presence of multiple air fresheners, which are often used to disguise the odor of drugs; Mr. Banks's hands shaking indicating he was "overly nervous" during the stop; Mr. Banks's continued nervousness throughout the stop; their travel plan of driving from Denver to Atlanta and then back again the

6

next day, which Trooper Simone considered unusual based on his experience with the motoring public; and Mr. Banks's driving behavior, which included slowing down in the presence of the patrol car even though he was not speeding and changing lanes.[1]

For the reasons previously stated, the Court credits Trooper Simone's testimony. And, while acknowledging the limited value that some of these factors might have in isolation or in other contexts, the Court finds, based on the totality of the circumstances in this case, that Trooper Simone had reasonable suspicion to continue the detention. Thus, Mr. Banks's challenge fails because it does not satisfy the first prong of the *DeLuca/Nava-Ramirez* test.

However, even if Mr. Banks satisfied the first prong, his argument still fails the second prong of the *DeLuca/Nava-Ramirez* test because he does not show a factual nexus between his continued detention and the discovery of the firearm. In *Nava-Ramirez*, the defendant was, like Mr. Banks, a non-owner driver. 210 F.3d at 1130. Following a valid traffic stop, the owner of the car gave consent to a search of the passenger compartment, which revealed no evidence of illegal activity. *Id.* The officer then conducted a nonconsensual search of the trunk and found methamphetamine. *Id.* The defendant argued that his detention after the first search was unlawful and that the drugs found in the second search should be suppressed. *Id.* at 1131. The Tenth Circuit rejected this argument, stating that even if the defendant had been unlawfully detained, he was not entitled to suppression because he did not demonstrate a factual nexus between his detention and the discovery of the drugs. *Id.* To show a sufficient factual nexus, a defendant must, "[a]t a minimum, . . . adduce evidence at the suppression hearing showing the evidence sought to be

---

[1] During closing argument, defense counsel pointed out that the government had not adduced evidence to support its contention in its response brief (Doc. 26) that Denver and Atlanta are known "source cities" for drugs. The government sought to reopen the evidentiary record and recall Trooper Simone to testify on that point. Over defense counsel's objection, the Court allowed testimony and cross-examination on the point, but the Court reserved ruling on the objection. The Court now sustains defense counsel's objection and disregards Trooper Simone's testimony about drug source cities. Further, that testimony—necessarily—played no part in the Court's decision.

suppressed would not have come to light but for the government's unconstitutional conduct." *Id.* The Tenth Circuit held that the defendant failed to meet the factual-nexus test because he did not put on evidence that if he had tried to leave the scene after the first search, the owner would have given him permission to take the car. *Id.*

Mr. Banks did not testify or otherwise introduce evidence that Mr. Sanders would have allowed him to leave in the Cadillac after Trooper Simone returned their documents and before the handgun was discovered, or otherwise demonstrate the factual nexus required by the Tenth Circuit. Therefore, Mr. Banks fails to satisfy the second prong of the *DeLuca*/*Nava-Ramirez* test.

## IV. CONCLUSION

For the reasons stated above, Mr. Banks is not entitled to suppression of the handgun found during the search of Mr. Sanders's car.

THE COURT THEREFORE ORDERS that Mr. Banks's Motion to Suppress (Doc. 23) is DENIED.

IT IS SO ORDERED.

DATED: January 25, 2019    */s/ Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE